[Crim. No. 3394. Fourth Dist., Div. Two. Nov. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY JOSEPH GOLDBERG, Defendant and Appellant.

## COUNSEL

Robert H. Green and Michael P. Gerbosi for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MITCHELL, J. pro tem.**\*——Defendant was charged by information of one count of possession of marijuana. After a jury trial he was found guilty as charged. He was granted probation on condition that he serve 90 days in the county jail. His appeal is from the order granting probation.[1]

Officer James Mahan responded to a disturbing the peace call at a Huntington Beach motel at approximately 3:30 a.m. on October 1, 1967. Upon reaching the motel entrance, he was met by the manager, Thelma Bowman. The apparent cause for the complaint was loud music being played on a phonograph in one of the units. While standing by his car next to the manager's office, the officer heard the music. The manager stated that she had not made the complaint and told the officer that she would go up to the

---

\*Assigned by the Chairman of the Judicial Council.

[1] An order granting probation is appealable. (Pen. Code, § 1237.)

room and ask the tenant to lower the volume. However, the officer indicated to her that the complaint had been received from a citizen who was not a resident of the motel and that he (the officer) wanted to speak personally to the occupants of the room.

Mahan and his partner, Officer Wehr, proceeded to the second level of the motel and knocked at the door of room 12, from which the music appeared to be originating. The door was opened by one Michael Bloomfield. The officer asked to speak to the individual renting the room. At that moment, defendant Goldberg appeared behind Bloomfield and identified himself as the registered occupant of the room.

The parties stipulated that Officer Mahan is qualified to detect the odor of burning marijuana. He testified that simultaneously with the opening of the door he smelled a strong odor of burning marijuana emanating from inside the room. Officer Mahan noted that the defendant appeared to be having difficulty maintaining his balance. His speech was slurred and his eyes were bloodshot and watery with the pupils dilated. The officer reached the conclusion that there was a narcotics violation occurring within the room. Officer Mahan testified that he asked permission to enter the room and the defendant consented to the entry.

There were four persons, including the defendant, present in room 12. They were all members of a band then appearing at a local night club. After some slight physical resistance by two of the persons in the room, Officer Mahan entered and went directly to the bedroom after a cursory observation of the living room and kitchen area.

The defendant was with the officer in the bedroom when a marijuana cigarette was found on the top of a nightstand between two beds. The cigarette was in plain sight.

Before warning the defendant of his *Miranda* rights, the officer asked him to whom the cigarette belonged. The defendant replied, "It's mine." The trial judge ruled that the defendant's statement was inadmissible because of the failure to give the constitutional admonitions.

A short period of time after discovering the cigarette, the officer gave the defendant the proper advisement of his rights. However, there is no direct evidence that defendant waived his rights. Officer Mahan testified, "The conversation was immediately from asking him if he understood his rights and if he was willing to talk about them with the rights in mind." After the warning, the officer asked him if he knew the contents of the cigarette, to which he replied, "It's grass." This statement was admitted over the objection of the defense.

The defendant was placed under arrest upon completion of a search of the bedroom.

Defendant testified to the following effect: Room 12 was registered in his name; he had occupied it for a period of a week prior to his arrest; there were 10 members of the band, each registered in separate rooms but each having free access to each other's room; he left his door unlocked at all times; the afternoon prior to the arrest several young ladies who were friends of one of the members of the band were in his room.

Defendant's testimony was essentially the same as the officer's concerning the events immediately preceding his arrest, but he denied any knowledge of the marijuana found in his room.

Defendant makes two allegations of error: (1) The officer's entry and subsequent search were unconstitutional and, therefore, all evidence resulting from the entry and search should be excluded; and (2) CALJIC Instruction No. 703 defining possession of marijuana is vague and does not set out an appropriate legal standard to apprise the jury as to a necessary element of the offense.

We consider first the propriety of the entry and subsequent search. In the instant case the officer was responding to a citizen's complaint of a possible violation of Penal Code, section 415 (disturbing the peace). Upon reaching the motel entrance, the officer was able to personally hear the loud music. Certainly, in view of the early morning hour, there was cause to believe that the offense of disturbing the peace was being committed in his presence. (See Pen. Code, § 836, subd. 1.) The concept of a crime committed in the "presence" of the officer has been liberally construed in California and includes perceptions by the use of all senses. (*McDonald* v. *Justice Court,* 249 Cal.App.2d 960 [58 Cal.Rptr. 29]; *People* v. *Lewis,* 214 Cal.App.2d 799, 802 [29 Cal.Rptr. 825].)

Defendant argues that a basic right to be free from an invasion upon one's privacy was violated when the officers proceeded to room 12 disregarding the suggestion of the manager that she could handle the situation. No authority is cited for this proposition nor could any be discovered. There is clearly nothing in Penal Code, section 836, to suggest that an officer may effect an arrest for an offense committed in his presence only with the consent of the owner or person in control of the premises where the crime is committed. Having probable cause to arrest for disturbing the peace, the officer had sufficient cause to go to defendant's door to seek an interview.

However, we do not rely on the officer's probable cause to arrest for a section 415 violation to justify the arrest and search, as the officer also had probable cause to arrest the defendant for a narcotics violation.

■ Manifestations of drug use such as dilated pupils, slurred speech and difficulty in balancing, when observed by an experienced officer, present grounds for a valid arrest. (*People* v. *Clifton*, 169 Cal.App.2d 617 [337 P.2d 871]; see also *People* v. *Murrietta*, 251 Cal.App.2d 1002 [60 Cal.Rptr. 56]; *People* v. *Garcia*, 227 Cal.App.2d 345, 350 [38 Cal.Rptr. 670].)

■ We conclude that defendant's physical appearance coupled with the odor of marijuana clearly gave the officer probable cause to arrest the defendant for a felony, and thus make valid a search incident to that arrest. (*People* v. *Harris*, 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225]; *People* v. *Winston*, 46 Cal.2d 151, 162 [293 P.2d 40]. Whether the search occurred before or after the actual arrest is immaterial since it was substantially contemporaneous. (*People* v. *Cockrell*, 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116].)

It is unnecessary for us to consider whether this warrantless search was in violation of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 285, 89 S.Ct. 2034], since the search was conducted before the date of the *Chimel* decision. (*People* v. *Edwards*, 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Chambers* *(Cal.App.) 275 A.C.A. 435.

Defendant next claims that the court erred in giving an instruction based on CALJIC 703.[2] His contention is that this instruction does not describe an appropriate legal standard on the issue of dominion and control and exclusive possession of narcotics.

The validity of various parts of this instruction has been considered in at least three California cases. In *People* v. *Simpson*, 170 Cal.App.2d 524, 532 [339 P.2d 156], the court held that the required element of knowledge of the presence of contraband is adequately covered in the instruction. In *People* v. *Brajevich*, 174 Cal.App.2d 438, 446 [344 P.2d 815], the court held that CALJIC 703 fully and correctly instructs the jury of the necessity that the defendant exercised control over the narcotics. In *People* v. *Bowens*, 229 Cal.App.2d 590 [40 Cal.Rptr. 435], this instruction was challenged on the grounds that the essential element of knowledge of the narcotic nature of the contraband is not expressed in the instruction. While

---

[2]CALJIC 703, given as modified, "Within the meaning of the law, a person is in possession of a narcotic when he knowingly has the narcotic under his dominion and control, and, to his knowledge, it either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible, and exclusive to him, provided however that two or more persons may have joint possession of a narcotic if jointly and knowingly they have the dominion, control, and exclusive possession I have described."

*A rehearing was granted by the Court of Appeal on August 26, 1969. The final opinion is reported in 276 Cal.App.2d 89 [80 Cal.Rptr. 672].

the reviewing court agreed that this was a defect in the instruction, it held that the defect was nonprejudicial.

■ In response to *People* v. *Bowens, supra,* 229 Cal.App.2d 590, CALJIC 703a[3] was adopted to clarify CALJIC 703. Both 703 and 703a were given in the instant case. Accordingly, we find that these instructions properly state the law in this area.

Defendant's only support for his contention of the invalidity of the instruction is several pages of alternative definitions of such words as "dominion," "control," and "exclusive" as paraphrased from Webster's Dictionary and Black's Law Dictionary. We find this argument unpersuasive.

The judgment is affirmed.

Kerrigan, Acting P. J., and Tamura, J., concurred.

---

[3]CALIC 703a, as given, states: "To constitute the illegal possession of a narcotic, the acts of dominion and control must be accompanied by knowledge on the part of the accused of (1) the presence of the narcotic object, and (2) of its narcotic nature. Unless such knowledge exists, the crime of illegal possession of a narcotic is not committed.

"The knowledge required by law may be shown by circumstantial evidence; it is manifested by the circumstances attending the possession, the manner in which it is exercised, the means used, and the sound mind and discretion of the person committing the act."