[Crim. No. 17773. In Bank. Aug. 7, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDOLPH LEE LONGWILL, Defendant and Appellant.

## COUNSEL

Kenneth A. Wilson, Sr., under appointment by the Supreme Court, for Defendant and Appellant.

Rose Elizabeth Bird and Michael P. Thorman as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Arnold O. Overoye, Willard F. Jones, Rick McClendon, Marjory Winston Parker and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—In the early morning hours of March 25, 1973, Deputy Sheriff Dufresne of the Sutter County Sheriff's Department stopped an automobile which had been proceeding in excess of 100 miles an hour. Defendant was a passenger in the vehicle. Deputy Sheriff Terry arrived in a backup unit, and after the driver had been placed under arrest for reckless driving, Officer Terry approached defendant and requested identification. From defendant's slurred responses, uncoordinated movements, and emission of the odor of alcohol, Officer Terry concluded defendant was inebriated and placed him under arrest for the misdemeanor offense of public intoxication. (Pen. Code, § 647, subd. (f).)

The officer then conducted a pretransportation search of defendant's person. He began with a pat-down, and felt nothing which resembled a

weapon. He then conducted a full body search, and seized one marijuana cigarette, one hashish pipe, and one package of Zig-Zag papers from defendant's left shirt pocket.

Defendant's motion to suppress this evidence was denied, and he thereafter pleaded guilty to possession of marijuana and possession of narcotics paraphernalia. He appeals from the judgment (Pen. Code, § 1538.5, subd. (m)), contending that under the California Constitution (Cal. Const., art. I, § 13) the evidence seized was the product of an unlawful search. We agree, and conclude the judgment must be reversed.

The full body search of defendant was invalid under settled principles of law developed painstakingly by this court in the recent past. (*People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Norman* (1975) *ante*, p. 929 [123 Cal.Rptr. 109, 538 P.2d 237].) ■ As we have been careful to explain on these occasions, the permissible scope of a search of the person incident to a valid arrest is dependent not on the single fact of the existence of a "custodial arrest," but rather on the relative danger to the officer associated with each particular arrest. More specifically, *Simon, Brisendine,* and *Norman* teach that full body searches are impermissible when the arrest will be disposed of by a mere citation, or when the arrestee is to be transported to the stationhouse in the police vehicle and there given the opportunity to post bond. As we shall explain herein, these same considerations govern the present case and forbid full body field searches of persons arrested for the offense of public intoxication.

■ In order to determine the precise nature of defendant's arrest a brief review of the relevant legislation is necessary. Defendant was arrested for violation of Penal Code section 647, subdivision (f). This section simply provides, inter alia, that it is a misdemeanor to be "found in any public place under the influence of intoxicating liquor." An officer arresting an individual under this section retains broad discretion to effect a number of dispositional alternatives. He may, of course, book and incarcerate the misdemeanant, and in that event we agree with the People that a full body search may be conducted immediately prior to incarceration to prevent the entry of contraband into the jail facility.[1]

---

[1]Under section 647, subdivision (ff), it is now the rule that the officer, if reasonably able to do so, shall place the public inebriate in a civil detoxification center as opposed to jail. The same considerations which would permit full searches of persons incarcerated in the jail facility would, of course, mandate that similar safeguards be taken to prevent the entry of contraband into a civil protective facility. However, we have been informed by

■

Alternatively, the individual may be given a citation and released either at the scene of the arrest or at the stationhouse, and thus be spared the process of booking and incarceration. Penal Code section 853.6 provides: "In any case in which a person is arrested for an offense declared to be a misdemeanor and does not demand to be taken before a magistrate, such person may, instead of being taken before a magistrate, be released according to the procedures set forth by this chapter. If *the arresting officer or his superior* determines that the person should be released, such officer or superior shall prepare [a citation and notice to appear] . . . If the person is not released prior to being booked and *the officer in charge of booking or his superior* determines that the person should be released, such officer or superior shall prepare such written notice to appear in court." (Italics added.) Accordingly, under section 853.6 there are four separate officials—the arresting officer, his superior, the booking officer, and his superior—who may intervene and divert the arrestee prior to actual incarceration.

A third and frequently utilized alternative specifically designed for the public inebriate is release pursuant to Penal Code section 849, subdivision (b)(2) (hereinafter referred to as section 849(b)(2)). The statute provides: "(b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever: . . . (2) The person arrested was arrested for intoxication only and no further proceedings are desirable."

The People contend on the authority of *People v. Markin* (1973) 34 Cal.App.3d 58 [109 Cal.Rptr. 609], that "once the officer arrests a person for public intoxication, it is likely that the suspect will be incarcerated." This conclusion appears to adopt a presumption in favor of the prosecution and ignores the established rule that it is the People, rather than the defendant, who bear the burden of justifying a warrantless seizure. (*Badillo v. Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) In fact, there is ample reason for believing the arrest herein would have been disposed of without the necessity for incarceration; that reason lies in the frequency with which section 849(b)(2) is used as an alternative to invoking the traditional mechanisms of the criminal process.

In a recent empirical study of law enforcement practices in six target counties it was found that release pursuant to section 849(b)(2) is a

amici curiae that Sutter County did *not* have available a civil detoxification facility at the time of the instant offense; thus the only alternatives available were incarceration in a jail facility or release under one of the statutory provisions discussed *infra.*

readily available, and in some instances, standard practice for disposing of arrests for public intoxication. (Moss, *Taking the Public Inebriate Out of California's Criminal Justice System* (1974) 7 U.C. Davis L.Rev. 539-567.) In 1972, for example, there were 4,958 arrests in Stockton under section 647, subdivision (f), of which 4,234 or 85.4 percent resulted in release pursuant to section 849(b)(2); in Lodi 286 of 393 arrestees, or 72.8 percent, were released; in Fresno 6,795 or 52.5 percent of the public intoxication arrests were disposed of by release under section 849(b)(2); and in San Francisco 6,475 or 41.7 percent were so diverted. But as impressive as these figures are, the trend after 1972 is even more striking. The author notes that "a major increase in § 849(b)(2) releases started in 1973" and that "the use of Penal Code section 849(b)(2) releases has become the prevalent mode for handling the public inebriate in most of the larger jurisdictions." (*Id.* at p. 549.) This conclusion is demonstrated by the fact that in 1973 Fresno had a 90 percent drop in public intoxication convictions when compared to the same period in 1972, which the author attributes not to "a lowered rate of making § 647(f) arrests within the City of Fresno, which have remained at a high level, but from the greatly increased use of § 849(b)(2)." (*Ibid.*, fn. 57.)

The conclusion to be drawn from these data is that when the arrestees released pursuant to section 849(b)(2) are added to those cited and released under section 853.6, there exists a significant probability that a given public intoxication arrest may never reach the point at which the individual is actually incarcerated.

The People, however, seek to justify the instant search as a form of "accelerated booking search." The reasoning proceeds from the premise that a full custody search is permissible at the stationhouse prior to booking, and therefore it is not a significantly greater intrusion into the sanctity of the person of the arrestee if the search is conducted in the field. We have no quarrel with this rationale if in fact the individual is to be subjected to the booking process. But our recent decisions raise serious objections to a rule which would permit unrestricted searches of all public intoxication arrestees regardless of whether they are ultimately to be incarcerated, which intrusions mysteriously ripen into "accelerated booking searches" in those few instances in which contraband is discovered on the person of the arrestee.

Considerations comparable to the foregoing have been invoked on numerous occasions by our Courts of Appeal to invalidate full custody searches of those arrested for public intoxication. In *People* v. *West*

(1973) 31 Cal.App.3d 175, 178-179 [107 Cal.Rptr. 127], the court stated: "Finally, the search could not have been upheld as a prelude to a jailhouse search because legally, there was no assurance that there would be a jailhouse search. After a suspect is arrested for public intoxication, but before he is incarcerated, it is possible for him to be released by the arresting officer (Pen. Code, § 849, subd. (b)(2)), or by the arresting officer's superior, by the booking officer, or by the booking officer's superior (Pen. Code, § 853.6). Although [the officer's] testimony is susceptible to the interpretation that he did not intend to release defendant prior to defendant's being incarcerated, it was certainly possible that [the officer's] superiors, or the booking officer, or the booking officer's superiors would have exercised their statutory right to release defendant prior to his being incarcerated. A jailhouse search is to protect 'the jail from the introduction of weapons or other contraband' [citation] and therefore should not be conducted unless the arrestee is in fact to be jailed."

In *People* v. *Smith* (1971) 17 Cal.App.3d 604, 606-607 [95 Cal.Rptr. 229], it was stated: "In the trial court, the People sought to sustain the search on the theory that it was nonprejudicial because defendant would have been searched at the time of booking in any event. They do not rely on that theory in this court, and for good reason. While the trial court did indicate a belief that defendant—handcuffed and in the police car—probably would have been transported to the police station, there is nothing to show that it found that defendant would have been formally booked and locked up at the station." Similarly, in *People* v. *Millard* (1971) 15 Cal.App.3d 759, 763 [93 Cal.Rptr. 402], also in the context of an arrest for public intoxication, the court said: "In this case the record is silent as to whether the police prior to their discovering the marijuana on appellant's person intended to jail him or release him without jailing him. Since the search under review was made without a warrant, the burden rested on the People to show proper justification therefor. [Citation.] They have not done this because they have failed to show us which of the two alternate courses available to the police under Penal Code section 849, subdivision (b)(2) the police intended to follow."

Although such a search cannot be justified as an accelerated booking search the officer may nevertheless conduct a *pat-down* prior to placing the arrestee in the police vehicle for transportation to the stationhouse and whatever disposition he or his superiors see fit to make at that later time. In *Brisendine* we adopted the concurring opinion of the chief justice in *Simon* to the effect that "the specifically articulable fact of the

increased danger to the officer reasonably warrants the limited or relatively minor intrusion of the pat-down search in those instances when traffic law violators are transported to a magistrate pursuant to the provisions of Vehicle Code sections 40302 or 40303." (Fn. omitted.) (*Simon,* at p. 214 of 7 Cal.3d (Wright, C. J., concurring).)

But having said that, it is also clear that the officer may not, as here, exceed a pat-down when the only justification is transportation in the police vehicle. Our decisions do not permit a distinction to be made between: (1) transportation to a magistrate as in *Simon;* (2) transportation to a magistrate for the offense of evading arrest as in *Norman;* and (3) transportation to the stationhouse for ultimate disposition by release and/or citation prior to incarceration as is the case with a significant percentage of public inebriates. In all these situations the same factors are operative: the potential harm to the officer if the arrestee is armed justifies a limited weapons search, but a full booking search is "inappropriate in the context of an arrestee who will never be subjected to that process." (*Brisendine,* at p. 547 of 13 Cal.3d.)[2]

Our conclusion that there is a significant probability the offense herein would have been disposed of by a method other than incarceration is buttressed by the fact that the arresting officer searched defendant only as a prelude to placing him in the patrol vehicle, and by his own admission found nothing which resembled a weapon. The testimony adduced at the preliminary hearing clearly reveals the officer's motivations.[3] The testimony, quoted in the margin, demonstrates that this was in fact a weapons search, excessive in scope. Such an intrusion, as we have seen, cannot be tolerated under California law.

[2]Some cases have drawn a distinction in public intoxication cases where the arrestee has no odor of alcohol on his breath. In those circumstances it has been held there exists probable cause to believe the arrestee is under the influence of a narcotic thus justifying a full search of the person to recover contraband. (See *People* v. *Superior Court (Johnson)* (1971) 22 Cal.App.3d 227 [99 Cal.Rptr. 338]; cf. *People* v. *Blatt* (1972) 23 Cal.App.3d 148 [99 Cal.Rptr. 855].) It seems to us a highly questionable proposition that mere absence of detectable alcoholic odor coupled with an officer's subjective conclusion that an individual is nevertheless in some degree intoxicated constitutes probable cause to conduct a warrantless search of the person for secreted narcotics. But in any event that case is not before us. Here there was the requisite strong odor of alcohol, thus vitiating any claim that the intrusion could be justified as a search for contraband.

[3]"Q [defense attorney]: Now, as I understand it, you—after observing him you placed him under arrest for 647(f), is that correct?
"A [arresting officer]: Yes.
"Q: Then you searched him?
"A: Correct.
"Q: What was the purpose of the search?

The only possible rationale which could be advanced to justify the instant search is the *Robinson-Gustafson* rule. (*United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467]; *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488].) That federal rule permits full body searches of all individuals subjected to custodial arrest regardless of the offense, and regardless of whether the individual is ultimately to be incarcerated. Indeed, much of the briefs and arguments of the parties and of amicus curiae before this court were directed to the question whether that rule should be applied in California. In *Brisendine* we held it should not, and the issue can no longer be considered open for adjudication. ■ ■■■ . To adopt the view of the People would resurrect *Robinson-Gustafson* in California, and give blanket authority to police to conduct unrestricted searches in the hundreds of thousands of arrests for public intoxication which occur annually in this state, even though it is factually demonstrable that a substantial number of the arrestees will never see the inside of a jail cell.[4]

"A: It's customary to search a suspect before placing him in a patrol vehicle.
"Q: What were you searching him for?
"A: Weapons.
"Q: Did you find any weapons?
"A: No.
"Q: How well did you search him?
"A: I went through all his pockets.
"Q: You went through all his pockets?
"A: That's correct.
"Q: Did you pat him down· first then go through his pocket?
"A: Correct.
"Q: And patting him down did you feel anything that felt like a weapon?
"A: No."

. [4]In their opposition to the brief filed by amici curiae the People argue that our ability to adopt a higher standard under the California Declaration of Rights (Cal. Const., art. I) than that set forth by the United States Supreme Court as a matter of federal constitutional law can be exercised only in "limited circumstances." It is further argued that "it is essential that this court clearly delineate the criteria which govern the question of when [former] article I, section 19 will serve as an independent state ground for adoption of a more stringent standard than that announced by the United States Supreme Court."

This argument presupposes that on issues of individual rights we sit as no more than an intermediate appellate tribunal, and that to the presumption of further·review there is but a "limited" exception which must be "clearly delineated." On the contrary, in the area of fundamental civil liberties—which includes not only freedom from unlawful search and seizure but all protections of the California Declaration of Rights—we sit as a court of last resort, subject only to the qualification that our interpretations may not restrict the guarantees accorded the national citizenry under the federal charter. In such constitutional adjudication, our first referent is California law and the full panoply of rights Californians have come to expect as their due. Accordingly, decisions of the United States Supreme Court defining fundamental civil rights are persuasive authority to be afforded respectful consideration, but are to be followed by California courts only when they provide no less individual protection than is guaranteed by California law.

■ For all the foregoing reasons we adhere to the lessons of *Simon, Brisendine,* and *Norman,* and to the above-quoted decisions of the Courts of Appeal, and thus forbid full body searches of individuals arrested for public intoxication until such time as they are actually to be incarcerated.[5] In our view such rule strikes a proper balance between the needs of law enforcement and the rights of the California citizen, and equally serves the salutary purpose of safeguarding the officer and the security of the jail facility. It also precludes the possibility of what evidently occurred in the case at bar, namely, a search which begins as a permissible weapons pat-down prior to transportation in the patrol car, but which is transformed—*mirabile dictu*—into an "accelerated booking search" if contraband is discovered on the person of the arrestee.

The judgment is reversed.

Wright, C. J., Tobriner, J., and Sullivan, J., concurred.

**BURKE, J.**\*—I concur in the reversal of the judgment under the compulsion of *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099] (Burke, J., dissenting, concurred in by McComb, J. and Clark, J.)

**CLARK, J.**—I dissent. For the reasons expressed in *People* v. *Brisendine* (1975) 13 Cal.3d 528, 553-558 [119 Cal.Rptr. 315, 531 P.2d 1099] (Burke, J. dissenting) and *People* v. *Norman* (1975) *ante,* p. 929 [123 Cal.Rptr. 109, 538 P.2d 237] (Clark, J., dissenting), I would affirm the judgment, upholding the search under *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467] and *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488].

McComb, J., concurred.

---

[5]For this reason the holding in *People* v. *Steeples* (1972) 22 Cal.App.3d 993, 996-997 [99 Cal.Rptr. 883], is hereby disapproved. The cases of *People* v. *Markin* (1973) 34 Cal.App.3d 58 [109 Cal.Rptr. 609], and *People* v. *Superior Court (Colon)* 29 Cal.App.3d 397 [105 Cal.Rptr. 695], both involved searches conducted at the station-house immediately prior to booking and thus are not inconsistent with the views expressed herein. However, *Markin* is disapproved insofar as it concludes that the enactment of section 647, subdivision (ff), shifts the burden to the defendant to demonstrate that he would not have been released under one of the statutory provisions discussed above. (*Markin,* at p. 62 of 34 Cal.App.3d.)

\*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.