[Crim. No. 15039. First Dist., Div. One. Aug. 9, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
LLOYD PALMER KNUTSON, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Demea G. Washington, Deputy Attorneys General, for Plaintiff and Appellant.

James C. Hooley, Public Defender, William K. Muraoka and John M. Pace, Assistant Public Defenders, for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—A municipal court judge sitting as a magistrate, overruling defendant Knutson's contention of a constitutionally invalid

detention, arrest, search, and seizure of marijuana and PCP[1] from his person, held him to answer for trial in the superior court on charges of possession of those substances. (See Health & Saf. Code, §§ 11357, 11378.) Thereafter the superior court, on Knutson's motion under Penal Code section 995, set aside the information insofar as it related to those charges (counts I and II). The People appeal from that order.

In our consideration of the appeal two principles of criminal procedure are apposite.

The first was recently stated in *People* v. *Hall,* 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664], in this manner: "Neither the trial court in a section 995 proceeding [citations] nor a reviewing court on appeal therefrom [citations] may substitute its judgment as to the weight of the evidence for that of the committing magistrate. 'Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.' [Citations.] Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information."

The second rule places emphasis, in judicial determination of the existence of probable cause for an arrest or search, particularly in narcotic cases, on the expertise of a trained and experienced police officer. It is expressed by our Supreme Court as follows. "The rule requiring probable cause 'should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes.' " (*People* v. *Medina,* 7 Cal.3d 30, 37 [101 Cal.Rptr. 521, 496 P.2d 433]; *People* v. *Superior Court (Kiefer),* 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449].) " 'Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult tasks of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have

---

[1]We are advised by the Bureau of Narcotic Enforcement that PCP is the controlled substance "Phencyclidine." (See Health & Saf. Code, § 11056, subds. (a), (b)(8).)

been so meaningful at the scene.' " (*People* v. *Gale,* 9 Cal.3d 788, 795-796 [108 Cal.Rptr. 852, 511 P.2d 1204].)

The case before us concerns Penal Code section 647, subdivision (f), which, as here relevant, states: "Every person . . . (f) Who is found in any public place *under the influence of intoxicating liquor* [*or*] *any drug* . . . in such a condition that he is unable to exercise care for his own safety or the safety of others"—is "guilty of disorderly conduct, a misdemeanor." (Italics ours.)

■ From the evidence the magistrate could reasonably have found, and presumably did find, the following facts.

Use of the controlled substance PCP tends to tighten .the user's muscles so that he cannot bend his knees, causing a "stiff-legged walking manner." And the pupils of the user's eyes do not have a normal reaction to light; they are "very pinpointed" even though the eyes are wide open in daylight. An experienced police officer with knowledge of these effects, and who had made about 100 arrests of persons possessing or under the influence of PCP, was cruising in a city park with a recreation department ranger, around 2 o'clock in the afternoon. The patrolled area was "known for heavy drug traffic." Three men standing on the sidewalk near the grass area observed the approaching police car, and as they did "two of them started off across the lawn area and the third started walking westbound on the sidewalk . . . ." The third person "was walking, trying to walk quickly, stiff-leggedly, walking in a very stiff-legged manner and swaying slightly." His walk was the "common type of walk . . . when they were under the influence of PCP." The officer decided to investigate further. He emerged from his car and walked over to the man for that purpose. The subject of the investigation, who was Knutson, the defendant of this case, was thus detained by the officer.

Knutson contended in the superior court, and here contends, that this detention was a Fourth Amendment infringement, under the authority of *Irwin* v. *Superior Court,* 1 Cal.3d 423 [82 Cal.Rptr. 484, 462 P.2d 12]. *Irwin* (p. 427) states: "Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful." Applying this rule, we opine that the experienced officer (see *People* v. *Medina, supra,* 7 Cal.3d 30; *People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d 807; *People* v. *Gale, supra,* 9 Cal.3d 788), and the magistrate, could reasonably conclude that the events were nevertheless

more consistent with conduct proscribed by Penal Code section 647, subdivision (f), and thus with criminal activity, than with innocent activity.

But we think that the single sentence excerpted by Knutson from *Irwin* does not state the true rule. Elsewhere *Irwin* states (p. 427) that in order to justify detention: " '[T]here must be a "rational" suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity . . . [and] some suggestion that the activity is related to crime.' " ▮ More recently the high court, without reliance on, or mention of, *Irwin*, stated the appropriate rule as: "Where there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint." (*People* v. *Flores*, 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353].) ▮ Under the "rational belief" test of *Flores* there can be no reasonable dispute that the officer's detention of Knutson was without constitutional flaw.

▮ We continue our narration of the facts as they bear upon Knutson's arrest.

Upon Knutson's detention for investigation the officer asked him "are you all right?" There was no answer. Asked for "some identification," Knutson "fumbled slightly through his wallet and produced his driver's license." Questioned if he had been drinking, he responded that he had "had a couple of beers." Requested so to do, he then blew his breath in the officer's face; there was no odor of alcohol. Knutson "spoke very little and when he did speak the voice, or his speech, was slightly slurred and he appeared very nervous." The officer testified: "I checked his eyes, I shielded my hands around his eyes and held them there for five to ten seconds and then removed them to see if there was any reaction of light to the pupils. . . . There was no reaction. . . . [H]is eyes were very wide open with very pinpointed pupils." Knutson was then given "field sobriety" tests; the results were uncertain, but he apparently flunked one, being unable to place his finger to the tip of his nose. His response to another was "fair," but nevertheless his "left leg was shaking and seemed to be under great strain." At this point the officer "felt that the suspect was unable to care for himself and [he] placed him under arrest for 647f drugs."

The officer was permitted to arrest Knutson if he had *reasonable cause* to believe that he was under the influence of "any drug . . . in such a condition [as to be] unable to exercise care for his own safety . . . ." (See Pen. Code, §§ 647, subd. (f), 836, subd. (1).) ██ " ' "Reasonable cause" is defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citation.] No exact formula exists for determining reasonable cause, and each case must be decided on the facts and circumstances presented to the officers at the time they were required to act.' " (*People* v. *Terry*, 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961] [cert. dism., 406 U.S. 912 (32 L.Ed.2d 112, 92 S.Ct. 1619)].)

██ Under this test we opine that upon the facts appearing to the magistrate, he reasonably could, and did, conclude that Knutson's arrest was founded upon probable cause, according to Fourth Amendment standards. ██ As said in *People* v. *Goldberg*, 2 Cal.App.3d 30, 34 [82 Cal.Rptr. 314], "Manifestations of drug use such as dilated pupils, slurred speech and difficulty in balancing, when observed by an experienced officer, present grounds for a valid arrest."

We proceed with our statement of the developing facts, as the magistrate must be deemed to have found them true.

██ Upon Knutson's arrest the officer "took him into the car and transported him to the jail." In the jail, prior to the booking procedure which the officer intended to, and did, himself conduct, Knutson was searched. The search disclosed marijuana and PCP, which substances were thereupon seized by the officer. Knutson was then booked on suspicion of felony, i.e., possessing the substances found, in violation of Health and Safety Code sections 11357 and 11378.

. Knutson's final contention is that the search was constitutionally invalid, and that accordingly the seized marijuana and PCP were not admissible in evidence at his preliminary hearing. Since without them there was no evidence of his guilt, he urges that he was "committed without reasonable or probable cause" (see Pen. Code, § 995), thus mandating the superior court's order setting aside the charges.

In support of the contention Knutson argues that a "field search" as made by the officer is impermissible "upon an arrest for public intoxication under Penal Code section 647(f)." His reliance is upon the

case of *People* v. *Longwill,* 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753], which we shall hereafter discuss.

██ "It is now settled that as an incident to a lawful arrest, a warrantless search limited both as to time [citation] and place [citation] may be made (1) for instrumentalities used to commit the crime, the fruits of that crime, and other evidence thereof which will aid in the apprehension or conviction of the criminal; (2) for articles the possession of which is itself unlawful, such as contraband or goods known to be stolen; and (3) for weapons which can be used to assault the arresting officer or to effect an escape." (*People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d 807, 812-813; and see *Chimel* v. *California,* 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034]; *Warden* v. *Hayden,* 387 U.S. 294, 300-310 [18 L.Ed.2d 782, 788-794, 87 S.Ct. 1642].)

But nevertheless California's courts will not apply this rule formalistically. They adhere to the basic Fourth Amendment principle (and that of the state's Const., art. I, § 13) that in any event "unreasonable searches" will not be permitted. Whether a search is reasonable depends upon the " 'facts and circumstances . . . and on the total atmosphere of the case.' " (*People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d 807, 827; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] [cert. den., 364 U.S. 841 (5 L.Ed.2d 65, 81 S.Ct. 79)].) "A search may be incident to a lawful arrest . . . and yet be unlawful because it was 'unreasonable in scope' . . . ." (*People* v. *Superior Court (Simon),* 7 Cal.3d 186, 201 [101 Cal.Rptr. 837, 496 P.2d 1205].)

This limiting principle will be applied to the ordinary arrest for a traffic offense. For in such an arrest "there are neither 'instrumentalities' used to commit the crime nor 'fruits' or [physical] 'evidence' thereof, so that a search for such items as an incident to the driver's arrest is unreasonable per se, . . ." (*People* v. *Superior Court (Simon), supra,* 7 Cal.3d 186, 201-202.) ██ "[V]iolation of a simple traffic regulation, standing alone, ordinarily does not justify a generalized search of the person. [It] ordinarily involves no tangible property; hence no implement or fruit of the crime or infraction will be found and any search beyond that required for protection against violence is an unjustifiable intrusion." (*People* v. *Mercurio,* 10 Cal.App.3d 426, 429 [88 Cal.Rptr. 750].)

██ The same principle has recently been applied to the arrest of outdoor campers for having an open campfire in violation of a county fire ordinance. The case was *People* v. *Brisendine,* 13 Cal.3d 528 [119

Cal.Rptr. 315, 531 P.2d 1099], where the court held a broad protective weapons search to be proper, but a still more general search involving small opaque containers found in a camper's knapsack to be constitutionally invalid. The court stated (pp. 539-540): "In the present case there could, of course, be no basis for a belief that the search of the pack would disclose evidence of the crime. The charge was maintaining an illegal campfire, and as with traffic violations, there can be neither 'instrumentalities' nor 'fruits' of that offense. Thus the only possible rationale for a search of defendant's knapsack was to uncover weapons. . . . Defendant was arrested for one of the most minor of nontraffic violations—a mere citation offense. In such a case the fact of the arrest does not justify a search of the belongings of the person cited: there can be no instrumentalities and there can be no fruits, . . ."

As earlier noted Knutson's reliance is upon the case of *People* v. *Longwill, supra,* 14 Cal.3d 943. *Longwill* extended application of the rule immediately under discussion to Penal Code section 647, subdivision (f), arrests "for the offense of *public intoxication.*" (Italics ours.) The court held that the considerations attending the usual traffic arrest forbade "full body field searches of persons arrested" for public intoxication. Knutson insists that this rule must be applied to his arrest.

Unlike the *Longwill* court, Knutson fails to recognize the dichotomous coverage of section 647, subdivision (f). His arrest was not for "public intoxication," as was the defendant's in *Longwill*; instead, it was for being under the influence of a controlled drug, PCP, the possession of which is a felony.

To be sure, the statute at issue[2] deals with "public intoxication." In this area it is concerned with the public abuse of "intoxicating liquor," a not uncommon human frailty rarely considered truly criminal, but more in the nature of a public nuisance. The beverage itself is not contraband, and its ordinary use is not unlawful. Its containers, if carried at all, are

---

[2]The full text of Penal Code section 647, subdivision (f), follows:

"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . (f) Who is found in any public place under the influence of intoxicating liquor, any drug, toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, in such a condition that he is unable to exercise care for his own safety or the safety of others, or by reason of his being under the influence of intoxicating liquor, any drug, toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way."

usually in plain sight. Although such "public intoxication" must ultimately be subject to criminal sanction, traditionally the hand of the law has been light. The arresting officer is required, and encouraged, to use minimal restraint. Unlike any other public offense known to us, upon an arrest for public intoxication the officer, in his discretion and if he deems "no further proceedings are desirable," may release the arrested person from custody and from any other penal proceedings. (See Pen. Code, § 849, subd. (b)(2).) Or the officer, if "reasonably able to do so," may reject the criminal procedure and place the person in "civil protective custody . . . for the 72-hour treatment and evaluation of inebriates." (See Pen. Code, § 647, subd. (ff).)

The other class of conduct controlled by section 647, subdivision (f), is the appearance in a public place of persons under the influence of "any drug, toluene" or certain "poison" which, when "inhaled, ingested, or breathed" will create an effect similar to that of a narcotic or dangerous drug (see Bus. & Prof. Code, § 4160, sched. "D"). In such cases the possession or use of the substance is more often than not, unlawful, and the substance itself, contraband. Additional dosage if left available to the arrested person, becomes increasingly harmful, and often lethal. And the substance's nature is such that, if not seized, it is conveniently disposed of after arrest, in police vehicles or otherwise. The law directs no quick release of persons under the substance's influence; indeed Penal Code sections 647, subdivision (ff), and 849 expressly disallow such a procedure when the subject is under the influence of a "narcotic, drug, or restricted dangerous drug . . . ." It would be wholly unreasonable, and inhumane, to release a drug user who a short time before was arrested "in such a condition that he [was] unable to exercise care for his own safety . . . ." And it has been expressly so held. Where there was probable cause to arrest for being under the influence of drugs or narcotics the police "could not have simply released" the arrested person. (*People* v. *Blatt,* 23 Cal.App.3d 148, 153 [99 Cal.Rptr. 855].)

As indicated *Longwill* dealt only with the first concern of section 647, subdivision (f), public intoxication. In such a case it may not reasonably be inferred that a search will disclose "contraband," or "evidence" of the offense, or its "fruits," or the "instrumentalities" used in its commission. Enlightened reason demands, with respect to searches, that such a subject be treated the same as the ordinary "traffic" violator of *People* v. *Superior Court (Simon), supra,* 7 Cal.3d 186, or the "illegal campfire" offender of *People* v. *Brisendine, supra,* 13 Cal.3d 528. This *Longwill* did.

Different considerations attended the arrest in the case at bench. From the facts apparent to the officer he had probable cause to believe that Knutson possessed "contraband," "evidence" of his offense, and the "instrumentalities" of its commission. (See *People v. Blatt, supra,* 23 Cal.App.3d 148, 152; *People v. Superior Court (Johnson),* 22 Cal.App.3d 227, 230-231 [99 Cal.Rptr. 338]; *People v. Munsey,* 18 Cal.App.3d 440, 447-448 [95 Cal.Rptr. 811]; *People v. Woods,* 139 Cal.App.2d 515, 524-525 [293 P.2d 901] [cert. den., 352 U.S.·1006 (1 L.Ed.2d 550, 77 S.Ct. 566)].) Without a search there existed a probability that the substance would be disposed of in some manner (see *People v. Brown,* 14 Cal.App.3d 507, 510-511 [92 Cal.Rptr. 473]), or worse, that the unfortunate possessor, in the "high" state he had brought upon himself, might ingest the drugs remaining upon his person. And unlike the usual person arrested for public intoxication there was far less probability that Knutson would be released without jail or other incarceration.[3]

We find nothing in *Longwill,* or elsewhere in the law, which indicates that one arrested on probable cause to believe him to be under the influence of a controlled proscribed drug, under the conditions of Penal Code section 647, subdivision (f), may not be subjected to a search as defined by *People v. Superior Court (Kiefer), supra,* 3 Cal.3d 807, 812-813.

*Longwill's* footnote 2 (14 Cal.3d, p. 950) has been considered by us. There the court said: "It seems to us a highly questionable proposition that mere absence of detectable alcoholic odor coupled with an officer's subjective conclusion that an individual is nevertheless in some degree intoxicated constitutes probable cause to conduct a warrantless search of the person for secreted narcotics. But in any event that case is not before us." The suggestion of the court is unquestionably sound. But here there was much more than the "mere absence of detectable alcoholic odor" and *subjective* conclusions of the officer. There was the *objective* evidence, among other things, of Knutson's stiff-legged and swaying manner of walking, his slurred speech and failure to answer the officer's question about his condition, the nonreaction of the pinpointed pupils of

---

[3]Upon reaching such a facility a full body search would be legally authorized. (See *People v. Martin,* 23 Cal.App.3d 444, 447 [100 Cal.Rptr. 272]; *People v. Williams,* 17 Cal.App.3d 275, 278 [94 Cal.Rptr. 735]; *People v. Monreal,* 264 Cal.App.2d 263, 265 [70 Cal.Rptr. 256].) In *Longwill* (14 Cal.3d, p. 948) the People argued "that a full custody search is permissible at the stationhouse prior to booking, and therefore it is not a significantly greater intrusion into the sanctity of the person of the arrestee if the search is conducted in the field." The court said: "We have no quarrel with this rationale if in fact the individual is to be subjected to the booking process."

his eyes to daylight, and his inadequate response to the "field sobriety" tests.

It becomes unnecessary for us to determine whether the search of Knutson at the jail, and prior to his booking, constituted the permissible stationhouse booking search according to *Longwill* and the other authority cited (see fn. 3, *ante*) on the subject.

For these several reasons the contentions of Knutson on his appeal are found to be invalid.

The order of November 14, 1975, setting aside counts I and II of the information is reversed.

Molinari, P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied September 8, 1976, and respondent's petition for a hearing by the Supreme Court was denied October 6, 1976.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.