*930 Opinion
JEFFERSON (Bernard), J.
J.— The People appeal[1] from an order dismissing a criminal prosecution after an order granting defendant’s motion, under section 1538.5 of the Penal Code, to suppress evidence. We affirm the order.
Defendant was seen by police officers walking on the sidewalk on Figueroa in the northeast section of Los Angeles around 11 p.m. Defendant was said to be walking in an unsteady manner and appeared to have problems maintaining his balance. Defendant was approaching the intersection of Figueroa and Garvanza—a well-lighted intersection. On the basis of this observation, an officer exited his vehicle and approached defendant to check him out. Upon approaching defendant, the officer recognized him as a person he had seen before.
The officer then observed that there was no odor of alcohol on defendant’s breath but that his speech was rapid and thick. The officer used his flashlight to check defendant’s eyes and they appeared to be dilated with no visible reaction to light. The officer also testified that defendant appeared to be confused and nervous. The officer then arrested defendant for being under the influence of drugs, in violation of subdivision (f) of section 647 of the Penal Code.[2] After the arrest, the officer searched defendant, finding in his shirt pocket packages of amphetamines. The possession of that drug was the basis for the prosecution herein involved.
Relying on a statement expressed in a footnote in People v. Longwill (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753], the trial court granted the motion to suppress.
*931 Longwill involved an arrest under the same code section for being under the influence of alcohol. A search disclosed the possession of narcotics. The Supreme Court held that such a search, under the facts of the case, was unlawful. The statement from Longwill reads as follows: “Some cases have drawn a distinction in public intoxication cases where the arrestee has no odor of alcohol on his breath. In those circumstances it has been held there exists probable cause to believe the arrestee is under the influence of a narcotic thus justifying a full search of the person to recover contraband. (See People v. Superior Court (Johnson) (1971) 22 Cal.App.3d 227 [99 Cal.Rptr. 338]; cf. People v. Blatt (1972) 23 Cal.App.3d 148 [99 Cal.Rptr. 855].) It seems to us a highly questionable proposition that mere absence of detectable alcoholic odor coupled with an officer’s subjective conclusion that an individual is nevertheless in some degree intoxicated constitutes probable cause to conduct a warrant-less search of the person for secreted narcotics. But in any event that case is not before us. Here there was the requisite strong odor of alcohol, thus vitiating any claim that the intrusion could be justified as a search for contraband.” (Longwill, supra, 14 Cal.3d 943, 950, fn. 2.)
The People seek to distinguish Longwill, and rely upon People v. Knutson (1976) 60 Cal.App.3d 856 [131 Cal.Rptr. 846], as controlling under the circumstances presented in the instant case.
In People v. Knutson (1976) 60 Cal.App.3d 856 [131 Cal.Rptr. 846], the court had before it a case in which the defendant had been arrested for being under the influence of drugs. A body search disclosed the possession of narcotics. The court discussed the footnote from Longwill and concluded that it did not apply, because the officer was trained in narcotic cases, had observed conditions and conduct indicative of narcotic usage. In distinguishing Longwill, the Knutson court said: “The suggestion of the court [Longwill] is unquestionably sound. But here there was much more than the ‘mere absence of detectable alcoholic odor’ and subjective conclusions of the officer. There was the objective evidence, among other things, of Knutson’s stiff-legged and swaying manner of walking, his slurred speech and failure to answer the officer’s question about his condition, the nonreaction of the pinpointed pupils of his eyes to daylight, and his inadequate response to the ‘field sobriety’ tests.” (Knutson, supra, 60 Cal.App.3d 856, 867-868.) (Italics in original.)
The Knutson case is far different from the facts presented in the case at bench, We are here concerned with the law governing probable *932 cause for an arrest or search in narcotic cases. A guiding principle is set forth as follows: One “rule places emphasis, injudicial determination of the existence of probable cause for arrest or search, particularly in narcotic cases, on the expertise of a trained and experienced police officer. It is expressed by our Supreme Court as follows: ‘The rule requiring probable cause “should not be understood as placing the ordinary man of ordinaiy care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes.” ’ ” (Knutson, supra, 60 Cal.App.3d 856, 860.) (Italics in original.)
The crucial test for probable cause to arrest for drug use depends upon the manifestations of drug use identified by an experienced police officer. It was observed in People v. Goldberg (1969) 2 Cal.App.3d 30, 34 [82 Cal.Rptr. 314] that “[mjanifestations of drug use such as dilated pupils, slurred speech and difficulty in balancing, when observed by an experienced officer, present grounds for a valid arrest.” (Italics added.)
In the case at bench, we have neither sufficient manifestations of drug use nor an experienced officer capable of recognizing the manifestations. Both of these factors were present in Knutson and thus distinguish Knutson from the instant case.
Both the manifestations of drug use and the experience of the officer are set forth in Knutson as follows: “Use of the controlled substance PCP tends to tighten the user’s muscles so that he cannot bend his knees, causing a ‘stiff-legged walking manner.’ And the pupils of the user’s eyes do not have a normal reaction to light; they are ‘very pinpointed’ even though the eyes are wide open in daylight. An experienced police officer with knowledge of these effects, and who had made about 100 arrests of persons possessing or under the influence of PCP, was cruising in a city park with a recreation department ranger, around 2 o’clock in the afternoon. The patrolled area was ‘known for heavy drug traffic.’ Three men standing on the sidewalk near the grass area observed the approaching police car, and as they did ‘two of them started off across the lawn area and the third started walking westbound on the sidewalk . ...’ The third person ‘was walking, trying to walk quickly, stiffIeggedly, walking in a very stiff-legged manner and swaying slightly.’ His *933 walk was the ‘common type of walk . .. when they were under the influence of PCP.’ ”
The only manifestations we have in the instant case are the facts that defendant was walking in an unsteady manner and seemed to have problems in maintaining his balance and his eyes did not react to light, and he had no odor of alcohol on his breath.
The officer testified that defendant’s speech was rapid and thick. Many normal persons talk rapidly and with a thick speech or accent. There is no testimony by any expert in this case that, based upon his expertise, rapid speech and thick speech are manifestations of drug use.
Furthermore, there is no testimony of the instant case that the police officer was experienced in what constitute manifestations of drug use. All of the testimony from the arresting officer regarding his expertise was directed to his knowledge of the method of packaging of amphetamines. After testifying that “just looking at the bindles” (obtained from the body search of defendant), the arresting officer stated that “from my prior training and experience, I recognized them as a method of packaging for amphetamines.” Then came the following questions and answers:
“Q. Would you tell the Judge what your training and background is, as far as the packaging of amphetamines.
“A. Well, my initial training was at the police academy.
“Since then I’ve attended a narcotics seminar which was given by Cal State L.A.
“I’ve made numerous arrests for possession of amphetamines. I’ve spoken to numerous arrestees that were arrested by other officers for the same offense.
“Q. Now, you mentioned that you recognized the way these amphetamines were packaged.
“A. Yes, sir.
“Q. Approximately how many times would you say that you have seen similar packaging on drugs before this particular arrest on March the 8th, 1976?
*934 “A. Twenty or 30 times, at least.
“Q. How many arrests have you actually participated in yourself where similarly wrapped items have been recovered?
“A. Somewhere between 40 and 50.
“Q. Now, at the very time you observed the way these items were packaged, as far as your own state of mind, what did you think you were looking at?
“A. Amphetamines packaged for sale.”
In Knutson, the evidence indicated that the arresting officer was experienced and trained in the manifestations of a person’s use of the controlled substance PCP which caused the user to walk in a stiff-legged fashion. In the instant case, we have no testimony from the arresting officer concerning his training, experience or expertise in determining manifestations of drug usage in general—only on expertise in packaging of amphetamines. This is insufficient to justify probable cause on the part of the officer that defendant was under the influence of a drug and in such a condition that he was unable to exercise care for his own safety or the safety of others.
The order of dismissal is affirmed.
Dunn, J., concurred.

Penal Code section 1238, subdivision (a)(7) provides that an appeal may be taken by the People from “[a]n order dismissing a case prior to trial made upon motion of the court pursuant to Section 1385 whenever such order is based upon an order granting defendant’s motion to return or suppress property or evidence made at a special hearing as provided in this code.”

Penal Code, section 647, subdivision (f) creates a misdemeanor of disorderly conduct for a person “[w]ho is found in any public place under the influence of intoxicating liquor, any drug, toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, in such a condition that he is unable to exercise care for his own safety or the safety of others, or by reason of his being under the influence of intoxicating liquor, any drug, toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way.”