[Crim. No. 29915. Second Dist., Div. Three. July 28, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
DENVER BURTON RICH, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

Leon Thompson for Defendant and Respondent.

## OPINION

**POTTER, J.**—This is an appeal from an order suppressing evidence pursuant to Penal Code section 1538.5. By information, defendant was charged with possession of heroin, a violation of Health and Safety Code section 11350. Defendant thereafter moved to suppress evidence found on his person at the time of arrest. The motion was heard on the basis of the evidence in the preliminary hearing transcript and was granted. The People represented that without the suppressed evidence, the prosecution of defendant could not proceed, and the case was dismissed on defendant's motion.

Los Angeles Police Department Officer Dennis C. Zeuner (hereinafter Zeuner) testified that he was assigned as a narcotic investigator to Central Narcotics and was on duty at 6 p.m., on February 6, 1976, with his fellow officer, both in plain clothes and in an unmarked police vehicle, conducting a narcotics investigation in the neighborhood of Fifth and Crocker Streets, Los Angeles. Defendant and his companion, Masselon A. Guin (hereinafter Guin) were observed standing inside a small "Mom and Pop" market on the southwest corner of the intersection. Zeuner stopped the police vehicle in front of the market, looked inside the market, and observed defendant standing at the rear of the meat counter, approximately 50 feet away. Zeuner testified that defendant was swaying with his head hung low and his movements appeared to be very slow and very deliberate, and that Guin's movements appeared to be the same. Zeuner testified he exited his police vehicle, entered the market, and started walking to the rear where defendant was standing. He observed defendant's eyelids appeared to be at half-mast as were those of Guin. As Zeuner approached defendant and Guin, Guin looked in the direction of the officer and then threw some objects to the ground. These objects were retrieved and found to be three small toy balloons containing narcotics. Guin was arrested.

Zeuner then commenced interviewing defendant. He asked defendant his name and a few other questions. Zeuner testified that during the conversation defendant's speech was "very slow, very soft, very deliber-

ate. He continued to sway as he stood, his movements were very slow. His eyelids continued to droop, his head was hung low . . . the pupil[s] of his eye[s] [were] constricted.

"At that point I formed the opinion that Mr. Rich was under the influence of an opiate. I placed him under arrest, also."

Upon further examination, Zeuner indicated that he had not smelled any odor of alcohol on defendant's breath. Zeuner then instructed his fellow officer to pat-down the defendant, and he heard the officer say, "What is in your front pocket?"[1] Zeuner then observed his fellow officer reach into defendant's pocket and extract a small red balloon which was subsequently found to contain heroin. The balloon and its contents were identified by Zeuner and admitted into evidence at the preliminary hearing. Both defendant and Guin were transported to Central Narcotics.

At the hearing on the motion to suppress, the defendant argued that the search of his person in the field was improper under the doctrine of *People* v. *Longwill,* 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]. The trial court agreed with defendant and granted the motion to suppress, stating as follows:

"I find as a fact that the officer observed symptoms of intoxication, smelled no alcohol on the breath of the defendant and arrested him for a violation of Section 647(f) of the Penal Code. [2]

". . . . . . . . . . . . . . . . .

"Considering the facts as stated the court finds as a matter of law that the search was unlawful."

---

[1]The People do not contend under the circumstances that it could be reasonably inferred that Zeuner's fellow officer suspected defendant had a weapon in his pocket.

[2]Penal Code section 647, subdivision (f), provides:
"Every person who commits any of the following acts is guilty of *disorderly conduct,* a misdemeanor:
". . . . . . . . . . . . . . . .
"(f) *Who is found in any public place under the influence of* intoxicating liquor, *any drug,* toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, *in such a condition that he is unable to exercise care for his own safety or the safety of others,* or by reason of his being under the influence of intoxicating liquor, any drug, toluene, any substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code, or any combination of any intoxicating liquor, drug, toluene, or any such poison, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way." (Italics added.)

The People appeal from the order of the court suppressing the evidence and dismissing the case.

## Contentions

The People contend: (1) the evidence adduced at the suppression hearing is insufficient to support the trial court's finding of fact that defendant was arrested under Penal Code section 647, subdivision (f); (2) the search of defendant following his arrest for being under the influence of an opiate was proper in all respects; and (3) assuming arguendo defendant was arrested pursuant to section 647, subdivision (f), the in-field search of his person pursuant to such arrest was nevertheless proper. Defendant controverts all of these contentions.

### The Evidence Was Insufficient to Support the Trial Court's Finding of Fact That Defendant Was Arrested Under Penal Code Section 647, Subdivision (f)

Our Supreme Court held in *People* v. *Lawler,* 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]: " ' "A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as a finder of fact.*" (*People* v. *Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].)' (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) (Italics added.) In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness. [Fn. omitted.]"

The record below does not indicate that the trial court at any point disbelieved Zeuner's testimony in any respect. There appeared to be no dispute over any fact other than the authorizing Penal Code section under which Zeuner acted in arresting defendant; that is, the offense for which defendant was arrested. The briefs submitted by counsel in this

case do not vary significantly in their presentation of the facts involved. Therefore, the issue is whether there was substantial evidence to support the trial court's determination that the defendant was arrested pursuant to Penal Code section 647, subdivision (f), despite the arresting officer's testimony that he was arrested pursuant to Health and Safety Code section 11550[3] for being "under the influence of an opiate." If there was not such substantial evidence, we must determine the propriety of the search upon defendant's arrest for a violation of Health and Safety Code section 11550.

■ We have examined the record and conclude that there is not substantial evidence to support the finding that defendant was arrested under Penal Code section 647, subdivision (f).

The evidence at the preliminary hearing showed that Zeuner was an expert in the field of narcotics. Zeuner testified that he had been "a police officer nine and a half years, currently assigned to narcotics as an investigator for twenty-seven months," and said:

"I have qualified in Municipal and Superior Court in excess of 125 times as a narcotic expert in the field of being under the influence of narcotics.

"I have received training in the police academy, in-service training, state narcotic seminars, other seminars presented by the administrative narcotics division of our department.

"I have read literature and articles regarding people being under the influence of an opiate, the effects of an opiate on the system.

"I have talked with physicians, who have informed me of symptoms of people being under the influence of [an] opiate.

---

[3]Health and Safety Code section 11550 provides: "No person shall use, or be under the influence of any controlled substance which is (1) specified in subdivision (b) or (c) of Section 11054, specified in paragraph . . . (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or (2) which is a narcotic drug classified in Schedule III, IV, or V, excepting when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances. It shall be the burden of the defense to show that it comes within the exception. Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. In no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail."

"I have also worked with senior officers approximately two years and in that period of time probably made close to 400 arrests for people [being] under the influence [of an opiate]. I have probably examined over two thousand people who have been under the influence of an opiate."

Our Supreme Court has expressed the rule for the judicial determination of the existence of probable cause for an arrest or search, particularly in narcotics cases, based on the expertise of a trained and experienced police officer, as follows: "The rule requiring probable cause 'should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes.' (*People* v. *Superior Court* [*Kiefer*] (1970) 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449], quoting with approval from *People* v. *Williams* (1961) 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].)" (*People* v. *Medina,* 7 Cal.3d 30, 37 [101 Cal.Rptr. 521, 496 P.2d 433].) " '[E]xperienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult tasks of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene.' (*People* v. *Cowman,* 223 Cal.App.2d 109, 117-118 [35 Cal.Rptr. 528].)" (*People* v. *Gale,* 9 Cal.3d 788, 795-796 [108 Cal.Rptr. 852, 511 P.2d 1204].)

Zeuner testified, and the testimony was not controverted or rebutted, that he had observed Guin throwing away objects which were subsequently retrieved and found to contain heroin; that Guin was a companion of defendant; that both Guin and defendant exhibited physical symptoms indicating to a trained narcotics investigator a probability that both defendant and Guin were under the influence of an opiate. Zeuner testified that he observed defendant sway while he was standing, that he moved slowly and deliberately with his head hung low, that there was sufficient light for him to observe defendant's eyelids were half-closed. When Zeuner interviewed defendant, he observed that his speech was slow, soft and deliberate, that defendant continued to sway while standing, and Zeuner was unable to detect any odor of alcohol on defendant's person. Based on these symptoms, Zeuner concluded that defendant was under the influence of an opiate and placed him under arrest.

The only finding that reasonably could be made on the basis of this testimony was a finding that defendant was arrested pursuant to Health and Safety Code section 11550. There was no evidence that defendant was guilty of disorderly conduct. Zeuner described no conduct of defendant nor gave any opinion to the effect that defendant was "in such a condition that he [was] unable to exercise care for his own safety or the safety of others" (Pen. Code, § 647, subd. (f)), or that defendant interfered with or obstructed or prevented "the free use of any street, sidewalk, or other public way" (*id.*). The described symptoms indicated only that defendant was under the influence of an opiate, and not that he was incapacitated as a result. The only crime for which defendant could be arrested, upon the basis of Zeuner's testimony, was a violation of Health and Safety Code section 11550.

### ■ THE SEARCH OF DEFENDANT FOLLOWING HIS ARREST UNDER HEALTH AND SAFETY CODE SECTION 11550 WAS PROPER

In light of our above conclusion, we turn to the question of the propriety and reasonableness of the search of defendant following his arrest for being under the influence of an opiate and conclude that it was proper in all respects.

In *People* v. *Superior Court (Kiefer),* 3 Cal.3d 807, 812-813 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], our Supreme Court said: "It is now settled that as an incident to a lawful arrest, a warrantless search limited both as to time (*Preston* v. *United States* (1964) 376 U.S. 364, 367-368 [11 L.Ed.2d 777, 780-781, 84 S.Ct. 881]) and place (*Chimel* v. *California* (1969) 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 89 S.Ct. 2034]) may be made (1) for instrumentalities used to commit the crime, the fruits of that crime, and other evidence thereof which will aid in the apprehension or conviction of the criminal; (2) for articles the possession of which is itself unlawful, such as contraband or goods known to be stolen; and (3) for weapons which can be used to assault the arresting officer or to effect an escape. . . ."

It is obvious that violation of Health and Safety Code section 11550 is a crime in respect of which a search of the suspect might reasonably be expected to produce instrumentalities used to commit the crime (opiates or devices to inject same), that such instrumentalities would aid in the conviction of the criminal and are themselves contraband. However, since the decision in *Kiefer,* our Supreme Court has imposed limitations

upon such arrest searches the effect of which is to invalidate them in cases in which the offense is one in respect of which "there exists a significant probability that" the "arrest may never reach the point at which the individual is actually incarcerated." This rule was originally announced in *People* v. *Longwill,* 14 Cal.3d 943, 948 [123 Cal.Rptr. 297, 538 P.2d 753]. In that case, a defendant arrested for violation of Penal Code section 647, subdivision (f), upon the basis of his apparent alcoholic intoxication, was subjected to a full pretransportation search which produced contraband. Defendant's motion to suppress was denied whereupon he pleaded guilty to possession of marijuana and of narcotics paraphernalia. On appeal, the judgment was reversed. The court pointed to statistics indicating that a high percentage of arrestees charged with violation of Penal Code section 647, subdivision (f), are merely cited and released pursuant to Penal Code section 853.6[4] or Penal Code section

---

[4]Penal Code section 853.6 reads:

"(a) In any case in which a person is arrested for an offense declared to be a misdemeanor and does not demand to be taken before a magistrate, such person may, instead of being taken before a magistrate, be released according to the procedures set forth by this chapter. If the arresting officer or his superior determines that the person should be released, such officer or superior shall prepare in duplicate a written notice to appear in court, containing the name and address of such person, the offense charged, and the time and place where and when such person shall appear in court. If the person is not released prior to being booked and the officer in charge of the booking or his superior determines that the person should be released, such officer or superior shall prepare such written notice to appear in court.

"(b) Unless waived by the person, the time specified in the notice to appear must be at least five (5) days after arrest.

"(c) The place specified in the notice shall be the court of the magistrate before whom the person would be taken if the requirement of taking an arrested person before a magistrate were complied with, or shall be an officer authorized by such court to receive a deposit of bail.

"(d) The officer shall deliver one copy of the notice to appear to the arrested person, and the arrested person, in order to secure release, must give his written promise so to appear in court by signing the duplicate notice which shall be retained by the officer. Thereupon the arresting officer shall forthwith release the person arrested from custody.

"(e) The officer shall, as soon as practicable, file the duplicate notice with the magistrate specified therein. Thereupon the magistrate may fix the amount of bail which in his judgment, in accordance with the provisions of Section 1275 of the Penal Code, will be reasonable and sufficient for the appearance of the defendant and shall indorse upon the notice a statement signed by him in the form set forth in Section 815a of this code. The defendant may, prior to the date upon which he promised to appear in court, deposit with the magistrate the amount of bail thus set. Thereafter, at the time when the case is called for arraignment before the magistrate, if the defendant shall not appear, either in person or by counsel, the magistrate may declare the bail forfeited, and may in his discretion order that no further proceedings shall be had in such case, unless the defendant has been charged with violation of Section 374b or 374e of this code or of Section 11357, 11360, or 13002 of the Health and Safety Code, or a violation punishable under Section 5008.7 of the Public Resources Code, and he has previously been convicted of a violation of such section or punishable under such section, except in cases where the magistrate finds that undue hardship will be imposed upon the defendant by requiring him to appear, the magistrate may declare the bail forfeited and order that no further proceedings shall be had in such case.

849, subdivision (b)(2).[5]

The *Longwill* court said in this respect (14 Cal.3d at p. 948): "The conclusion to be drawn from these data is that when the arrestees

"Upon the making of such order that no further proceedings be had, all sums deposited as bail shall forthwith be paid into the county treasury for distribution pursuant to Section 1463 of this code.

"(f) No warrant shall issue on such charge for the arrest of a person who has given such written promise to appear in court, unless and until he has violated such promise or has failed to deposit bail, to appear for arraignment, trial or judgment, or to comply with the terms and provisions of the judgment, as required by law.

"(g) The officer shall indicate on the notice to appear whether he desires the arrested person to be booked as defined in subdivision 21 of Section 7 of this code. In such event, the magistrate shall, before the proceedings are finally concluded, order the defendant to be booked by the arresting agency.

"(h) A peace officer may use the written notice to appear procedure set forth in this section for any misdemeanor offense in which the officer has arrested a person pursuant to Section 836 or in which he has taken custody of a person pursuant to Section 847.

"(i) If the arrested person is not released pursuant to the provisions of this chapter prior to being booked by the arresting agency, then at the time of booking the arresting officer, the officer in charge of such booking or his superior officer, or any other person designated by a city or county for this purpose shall make an immediate investigation into the background of the person to determine whether he should be released pursuant to the provisions of this chapter. Such investigation shall include, but need not be limited to, the person's name, address, length of residence at that address, length of residence within this state, marital and family status, employment, length of that employment, prior arrest record, and such other facts relating to the person's arrest which would bear on the question of his release pursuant to the provisions of this chapter.

"(j) Whenever any person is arrested by a peace officer for a misdemeanor, other than an offense described in subdivision (b) of Section 11357 or subdivision (c) of Section 11360 of the Health and Safety Code, and is not released with a written notice to appear in court pursuant to this chapter, the arresting officer shall indicate, on a form to be established by his employing law enforcement agency, which of the following was a reason for such nonrelease:

"(1) The person arrested was so intoxicated that he could have been a danger to himself or to others.

"(2) The person arrested required medical examination or medical care or was otherwise unable to care for his own safety.

"(3) The person was arrested for one or more of the offenses listed in Section 40302 of the Vehicle Code.

"(4) There were one or more outstanding arrest warrants for the person.

"(5) The person could not provide satisfactory evidence of personal identification.

"(6) The prosecution of the offense or offenses for which the person was arrested or the prosecution of any other offense or offenses would be jeopardized by immediate release of the person arrested.

"(7) There was a reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be imminently endangered by release of the person arrested.

"(8) The person arrested demanded to be taken before a magistrate or refused to sign the notice to appear.

"(9) Any other reason, which shall be specifically stated on the form by the arresting officer."

[5]Penal Code section 849 reads:

"(a) When an arrest is made without a warrant by a peace officer or private person,

released pursuant to section 849(b)(2) are added to those cited and released under section 853.6, there exists a significant probability that a given public intoxication arrest may never reach the point at which the individual is actually incarcerated."

In *People* v. *Maher,* 17 Cal.3d 196, 199 [130 Cal.Rptr. 508, 550 P.2d 1044], our Supreme Court explained the *Longwill* decision as follows: "*Longwill* is the most recent in a series of opinions in which we developed the criteria for determining the permissible scope of a search of an arrestee being transported by police officers. (*People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].) Beginning with *Simon,* we have classified the offense in terms of the possible disposition of the arrest, i.e., whether the arrestee is to be cited and immediately released, or taken before a magistrate or other official and given the opportunity to post bail, or booked and incarcerated. (*Brisendine,* 13 Cal.3d at p. 536.) The rule to be distilled from these decisions is that a full body search incident to arrest is impermissible when the person is arrested for an offense for which he will merely be cited or released on bail."

The standards stated in *Longwill* and *Maher* do not invalidate the full search made of defendant in this case. There is no significant probability that a person arrested for violation of Health and Safety Code section 11550 will simply be cited or released on bail without incarceration. Penal Code section 849 does not authorize release of persons arrested for being under the influence of narcotics (except where there are insufficient grounds for making a criminal complaint) unless "such person is

---

the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

"(b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

"(1) He is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

"(2) The person arrested was arrested for intoxication only, and no further proceedings are desirable.

"(3) The person was arrested only for being under the influence of a narcotic, drug, or restricted dangerous drug and such person is delivered to a facility or hospital for treatment and no further proceedings are desirable.

"(c) Any record of arrest of a person released pursuant to paragraphs (1) and (3) of subdivision (b) shall include a record of release. Thereafter, such arrest shall not be deemed an arrest, but a detention only."

delivered to a facility or hospital for treatment" (§ 849, subd. (b)(3)). If the arrestee is so delivered to a facility or hospital, it is clear that a full search would be appropriate "to prevent the entry of contraband into a civil protective facility." (*People* v. *Longwill, supra,* 14 Cal.3d at p. 946, fn. 1.)

The likelihood of a release pursuant to Penal Code section 853.6 without prior incarceration is remote. A comparison of the provisions of Health and Safety Code section 11550 with the provisions of Penal Code section 853.6 raises a serious question as to whether the procedures specified in the latter can properly be applied to persons arrested for a violation of the former. If Penal Code section 853.6 is applicable to persons arrested for violation of Health and Safety Code section 11550, they may, as a result, be released subject to an obligation to appear pursuant to a "written notice to appear in court." (§ 853.6, subd. (a).) Thereupon, a magistrate may fix the amount of bail. If the defendant posts such bail and thereafter fails to appear, "the magistrate may declare the bail forfeited, and may in his discretion order that no further proceedings shall be had in such case." (§ 853.6, subd. (e).) Such a result would be directly contrary to the mandatory provision of Health and Safety Code section 11550 that "[i]n no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail."

Furthermore, Penal Code section 853.6, subdivision (j)(6), indicates that a reason for denial of immediate release is that "[t]he prosecution of the offense or offenses for which the person was arrested . . . would be jeopardized by immediate release of the person arrested." It is obvious that the release of a person arrested for violation of Health and Safety Code section 11550 would jeopardize the prosecution for the offense by precluding the prosecution from effectively obtaining scientific evidence of the offense by conducting urine or other appropriate tests.

No statistics have been submitted comparable to those cited in *Longwill* to show that the probable result of an arrest for violation of Health and Safety Code section 11550 will be disposition in which the arrestee is not "actually incarcerated." In view of the serious nature of the offense, as indicated by the mandatory 90 days confinement in jail and the importance of a jail booking to insure the availability of vital evidence, it cannot be assumed that wholesale abuse of discretion on the part of law enforcement personnel has resulted in violations of Health and Safety Code section 11550 being treated as common cases of public intoxication.

The search was not conducted in an unreasonable manner in that defendant was not subjected to any shocking, abusive or unnecessarily embarrassing treatment, and defendant does not so contend. Such a body search may be conducted in the field or at the station during the booking process. (*People* v. *Ross,* 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606] (revd. on other grounds *sub nom. Ross* v. *California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]); *People* v. *Gomez,* 26 Cal.App.3d 928, 930 [103 Cal.Rptr. 453]; *People* v. *Yniguez,* 15 Cal.App.3d 669, 672-673 [93 Cal.Rptr. 444].) Thus, we conclude that defendant was properly arrested and searched, and the trial court's order suppressing evidence found during such search incident to arrest was error.

### *It Is Unnecessary to Decide the Propriety of Search Upon Arrest Pursuant to Penal Code Section 647, Subdivision (f), for Drug Intoxication*

It is not necessary for us to reach the question of the propriety of an in-field search of defendant's person had defendant been arrested pursuant to Penal Code section 647, subdivision (f), because we have concluded that he was arrested for a violation of Health and Safety Code section 11550. However, in this regard, we note that the recent case of *People* v. *Knutson,* 60 Cal.App.3d 856, 867 [131 Cal.Rptr. 846], sustains the validity of full searches of suspects arrested pursuant to Penal Code section 647, subdivision (f), with probable cause to believe that they are under the influence of drugs.

The order of the trial court suppressing the evidence found on defendant's person and dismissing the case is reversed.

Cobey, Acting P. J., and Allport, J., concurred.

On August 8, 1977, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied September 28, 1977.