[No. H009307. Sixth Dist. Nov. 9, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DOUGLAS LIVELY, Defendant and Appellant.

**COUNSEL**

Stephen Gibbs, under appointment by Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COTTLE, Acting P. J.**—After his motion to suppress evidence (Pen. Code, § 1538.5) was denied, defendant James Douglas Lively pleaded guilty to one count of driving while having .08 percent or higher blood alcohol (Veh. Code, § 23152, subd. (b)) and one count of driving while his license was suspended (Veh. Code, § 14601.2, subd. (a)). Defendant also admitted allegations that within the past seven years he suffered four prior convictions for violating Vehicle Code section 23152, subdivision (a), one prior conviction for violating Vehicle Code section 23152, subdivision (b), and three prior convictions for violating Vehicle Code section 14601.2, subdivision (a). A third count for driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)) was dismissed pursuant to a negotiated plea. Defendant was sentenced to 16 months in state prison.

On appeal, defendant contends his breath test results should have been suppressed because warrantless misdemeanor arrests are permissible only if the offense is committed in the officer's presence (Pen. Code, § 836,

subd. 1) and the officer who arrested defendant for *driving* under the influence of alcohol did not see him drive. (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753 [280 Cal.Rptr. 745, 809 P.2d 404].) The trial court found that defendant could have been arrested for public intoxication (Pen. Code, § 647, subd. (f)), which occurred in the officer's presence, and on that basis could have been required to submit to a breath test. We agree, notwithstanding an arguably inconsistent position taken by the Appellate Department of the Los Angeles Superior Court in *People* v. *Engleman* (1981) 116 Cal.App.3d Supp. 14 [172 Cal.Rptr. 474]. Accordingly we shall affirm the judgment.

## FACTS

As Francis Groce was backing into his driveway at 3074 Woodmont Drive in San Jose at 9:15 p.m. on May 10, 1991, he noticed defendant sitting alone in a car across the street. From his kitchen window about five minutes later, Groce saw defendant's vehicle "started up, went to one end of the street, pulled in a driveway, backed up, came down to the other end of the street, made a U-ball." Defendant then "pulled back where he was parked the first time. Sit [*sic*] there for a little bit, then he started up again, and he pulled about two houses down. There was another parked vehicle, he pulled up behind it, stopped there, sit their [*sic*] for a few minutes, backed up, then back down, turned around in the same driveway, turned. So he drove slowly down the curve, went down and made another U-turn and then turned all the way around without stopping this time, drove all the way up, made an [*sic*] U-turn in the driveway, came all the way back, then he parked across the street again where he first parked." Groce became suspicious and called police.

Officer Wong responded to a dispatch call of "suspicious person in a . . . white over blue Dodge Plymouth, dark-type vehicle" on Woodmont Drive. When he saw the vehicle, which was legally parked, Wong asked the defendant who was in the driver's seat behind the steering wheel "to step out of the vehicle . . . to make sure he didn't have any weapons." As defendant was getting out of the car, Wong noticed signs of intoxication: "slurred speech; red, bloodshot eyes; he was staggering when he was walking; and he had an odor of alcohol on his breath." Wong felt the engine, which was warm, and noticed keys in the ignition. He administered various field sobriety tests, including the nystagmus test, balancing test, and finger dexterity test, and determined that defendant was intoxicated. He had no doubt defendant was "quite impaired."

When Wong asked for identification, defendant produced his driver's license, which proved to be suspended. At that point, Wong arrested defendant for driving under the influence of alcohol. Breathalyzer tests revealed

blood-alcohol levels of .28 and .29 percent. At the station, Wong learned that defendant had five prior convictions for driving under the influence.

## Discussion

Penal Code section 836, subdivision 1, permits a warrantless arrest for a misdemeanor only when the officer "has reasonable cause to believe that the person to be arrested has committed a public offense *in his presence.*" (Italics added.) ▓ Misdemeanor "drunk driving" (Veh. Code, § 23152) occurs in the officer's presence if the officer personally observes the arrestee (1) driving (2) a vehicle (3) while under the influence of intoxicants, or having .08 percent alcohol in the blood.[1] Driving means any volitional movement of the vehicle. (*Mercer* v. *Department of Motor Vehicles, supra,* 53 Cal.3d 753, 756.) Where, as here, the officer does not personally observe the driving element of the offense, a warrantless arrest for drunk driving is invalid. (*Padilla* v. *Meese* (1986) 184 Cal.App.3d 1022, 1027 [229 Cal.Rptr. 310].)

The issue we address is whether the arrest can be justified on the ground that *another* public offense was committed in Officer Wong's presence: to wit, public intoxication in violation of Penal Code section 647, subdivision (f).[2] This offense is complete if the arrestee is (1) intoxicated (2) in a public place and *either* (3) is unable to exercise care for his own safety or the safety

---

[1]Two exceptions to this rule—for arrests made at or near an accident scene or where the vehicle is obstructing a roadway—are not applicable here. (See Veh. Code, § 40300.5.)

[2]Penal Code section 647, subdivision (f) provides that any person "[w]ho is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in such a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way" is guilty of disorderly conduct, a misdemeanor.

The magistrate denied defendant's motion to suppress evidence on two alternative grounds: first, that the officer had sufficient circumstantial evidence of driving, and second, that the arrest could be justified on the ground defendant was drunk in a public place. The magistrate stated: "Let me say I have a tendency to agree with [the deputy district attorney]. I recognize what the most recent case law has indicated about the need for there to have to been [*sic*] the evidence of driving. I don't think it says, however, that the officer must specifically observe the driving. The element of the offense can also be supplied both by the observations of the officer, together with the other evidence provided by the witness that actually saw the driving without the need to have that witness take the defendant into custody. [¶] It would also appear to the court that in this case there's the additional factor that we have evidence that the defendant, although he was booked for the driving under the influence, could nevertheless have the legitimate arrest based on the overwhelming condition of drunkenness that he actually was drunk in public as well. And it seems to me that in this case, given that additional element there was a valid arrest as well. . . . And I'm just clarifying for the record my view. You can make whatever arguments you want at the superior court level, but it does seem to me that there are two things: one, it's sufficient probable cause for arresting for drunk in

of others *or* (4) interferes with or obstructs or prevents the free use of any street, sidewalk or public way.

■ In the present case, the first two elements are met (defendant was intoxicated and was in a public place[3]) and the fourth element is inapplicable (defendant was not obstructing free use of the streets). Thus, a valid warrantless arrest for public intoxication hinges on whether the third element is met.

Defendant asserts "there is no evidence in the record to show that Appellant was unable to exercise care for his own safety or the safety of others. (Penal Code section 647(f).) The requirement that explicit facts be in the record in order for the court to make such a finding is mandated by *People v. Rich* [(1977) 72 Cal.App.3d 115, 122 [139 Cal.Rptr. 819] and *People v. Engleman, supra,* [116 Cal.App.3d Supp. 14]. . . . [T]his aspect of *Engleman* has been cited with approval by the California Supreme Court in *Mercer v. Department of Motor Vehicles, supra. Mercer* is binding on this court." (Italics omitted.)

Defendant points to the factual similarity between *Engleman* and the instant case. In *Engleman,* the defendant was found asleep at the steering wheel of his car, parked with the engine running, on the shoulder of a highway. It took police officers two minutes to wake him up. The officers noticed signs of intoxication and saw an open beer can on the dashboard of the car. They administered field sobriety tests, which defendant failed, and then arrested him for driving under the influence of alcohol. A breath test was subsequently taken. On appeal defendant argued the officers' observations of him, the field sobriety tests, and the breath test were products of an unlawful arrest in that he did not drive his car in the presence of officers and therefore could not validly be arrested for drunk driving.

The appellate department of the superior court held there was no reason to suppress the officers' observations and field sobriety test results because these were taken prior to defendant's illegal arrest. On the other hand, it was error to admit the breath test results into evidence because they were products of an illegal arrest.

public. And secondly, that there was sufficient probable cause, though it was initially a misdemeanor arrest for vehicle code 23152(A) and (B) violation because although the officer did not observe the driving itself, he had circumstantial evidence of the driving given where the defendant was seated, the fact that the keys were in the ignition, that the hood was hot, and added to that, then, the statement of the witness who actually saw the driving. So there was evidence of driving. And the court believes that is sufficient."

[3]In *People v. Belanger* (1966) 243 Cal.App.2d 654, 656-657 [52 Cal.Rptr. 660], the "sole question presented" was whether an individual found drunk in his automobile parked at the curb of a public street was in "a public place" within the meaning of Penal Code section 647, subdivision (f). That court held that he was.

The court explicitly rejected the People's attempt to justify the evidence on the basis that defendant could have been arrested for illegal parking, having an open container of an alcoholic beverage in the vehicle, or "being plain drunk." The first two offenses, the court noted, would not justify a breath test. Being "plain drunk" would justify a breath test, "[b]ut the facts in our record show no justification for such an arrest under Penal Code section 647, subdivision (f). The settled statement says, 'No evidence was presented as to defendant's ability to care for his own safety or the safety of others.' That is a necessary element of a plain drunk arrest. (*People* v. *Rich* (1977) 72 Cal.App.3d 115, 122 [parallel citation].) While the facts of our case are similar to those in *People* v. *Kelley, supra,* 3 Cal.App.3d 146 [83 Cal.Rptr. 287], the *Kelley* opinion states that, '[T]he circumstances indicated that prompt and efficient police action was necessary for the defendant's safety, as well as that of the public.' Thus the record in *Kelley* supported all the elements of Penal Code sections 647, subdivision (f) whereas our record is lacking in the element of ability to care for oneself, etc." (*People* v. *Engleman, supra,* 116 Cal.App.3d at p. Supp. 19.)

We disagree. The facts as recited in *Engleman* clearly justified an arrest for public intoxication. The defendant was intoxicated; his motor skills were impaired; and he was behind the steering wheel of a car parked with the engine running on the shoulder of a highway. These circumstances posed a clear threat both to defendant and to the public.

While the court in *Engleman* attempted to distinguish its facts from those in *People* v. *Kelley* (1969) 3 Cal.App.3d 146 [83 Cal.Rptr. 287][4] on the ground that in *Kelley* "efficient police action was necessary for the defendant's safety, as well as that of the public," (*id.,* at p. 150) we see no meaningful distinction. One reason "efficient police action was necessary" was because the defendant in *Kelley* was intoxicated and behind the steering wheel of a potentially deadly instrumentality. As the *Kelley* court observed in the very next sentence, Kelley's "apparent condition threatened even greater danger if he were allowed to move his vehicle." (*Id.,* at p. 150.) Likewise the defendant's condition in *Engleman* threatened danger if he were allowed to move his vehicle.

Nevertheless, the *Engleman* court concluded that its record, unlike the record in *Kelley,* was "lacking in the element of ability to care for oneself,

---

[4]The facts in *Kelley* are as follows: police responded to a radio call " 'man down in a white Pontiac.' " (3 Cal.App.3d at p. 149.) They found defendant slumped over the steering wheel of a car parked in a traffic lane. The lights were off, the motor was running, and a nearly empty bottle of whiskey was on the front seat. When the defendant was pulled from the car and told he was under arrest for drunk driving, a fight ensued.

etc." (*Engleman, supra,* 116 Cal.App.3d at p. Supp. 19.) In this respect *Engleman* considered its facts similar to those in *People* v. *Rich* (1977) 72 Cal.App.3d 115 [139 Cal.Rptr. 819]. In *Rich,* a police officer noticed the defendant inside a " 'Mom and Pop' " market. The defendant's speech was slow, his eyelids drooped, his head hung low, and he swayed. The officer arrested him for public intoxication, and a search of his person yielded a red balloon containing heroin. After the trial court granted the defendant's motion to suppress evidence, the People appealed. The Court of Appeal reversed. Although the arrest under Penal Code section 647, subdivision (f) was improper because the "described symptoms indicated only that defendant was under the influence of an opiate, and not that he was incapacitated as a result," the defendant could have been arrested for being under the influence of an opiate in violation of Health and Safety Code section 11550 and could have been searched on that basis. (*Id.,* at p. 122.)

We believe the *Engleman* court's reliance on *Rich* is misplaced. The defendant in *Rich* was not behind the steering wheel of a car; thus, the court did not need to consider the destructive potential of a motor vehicle at the hands of an intoxicated person. There was no other evidence that he posed a threat to himself or others. The facts in *Engleman* and in the present case are more analogous to those in *Kelley.* ■ In our view whenever a person *so intoxicated that his motor skills are impaired* is found as a potential driver behind the steering wheel of a car, this constitutes evidence the person is unable to exercise due care for his safety or the safety of others.

Defendant also purports to rely on *Mercer* v. *Department of Motor Vehicles, supra,* 53 Cal.3d 753. However, that opinion supports our conclusion that an intoxicated person behind the steering wheel of a car, with keys in the ignition, is unsafe to himself and others in his way. In *Mercer,* the defendant was found slumped over the steering wheel of his car. His seat belt was fastened, the car lights were on, and the engine was running. As here, the car was legally parked against the curb of a residential street. The officer had to rock on the car to wake up the defendant. "[W]hen Mercer 'finally [came] around, he started pulling gears [on the manual transmission] as if . . . in his mind, he was already driving or about ready to drive.' " (*Id.,* at p. 757.) Eventually, he ceased attempting to drive and rolled down his window. At that point, the officer detected a heavy odor of alcohol and asked Mercer to exit the vehicle. Mercer stumbled to the sidewalk. The officer noticed slurred speech and red, watery eyes. He arrested Mercer without a warrant for driving under the influence of alcohol. Mercer refused to take a chemical test, and his license was revoked. (Veh. Code, §§ 13353, 23157.) The Supreme Court held that because the officer who arrested Mercer did not see his vehicle move, Mercer was not lawfully arrested for a violation of Vehicle

Code section 23152, subdivision (a), and thus could not be subjected to the license revocation provisions of Vehicle Code sections 13353 and 23157.

At two points in the opinion, however, the court noted that Mercer could have been arrested for public intoxication. Specifically, the court stated: "[T]he Court of Appeal (and the DMV as well) appears to have overlooked the fact that the officer did not have to wait for Mercer to move his vehicle before making an arrest. On these facts, Mercer could have been arrested for attempted drunk driving (*People* v. *Garcia* (1989) 214 Cal.App.3d Supp. 1, 5 [parallel citation]) or public intoxication (Pen. Code, § 647, subd. (f); see *People* v. *Engleman, supra,* 116 Cal.App.3d Supp. 14, 19, and cases cited), and thereafter—pursuant to *Schmerber, supra,* 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct.186]—he could have been forced to submit to a chemical test, *regardless* whether he met the separate requirements of section 23157 (i.e., 'lawful arrest' for a violation of § 23152)." (*Mercer, supra,* 53 Cal.3d at pp. 762-763.) Later on in a footnote, the *Mercer* court again observed that "[o]n these facts it appears Mercer violated Penal Code section 647, subdivision (f), because (i) he was intoxicated in a public place (see *People* v. *Kelley* (1969) 3 Cal.App.3d 146, 150, fn. 2 [parallel citation]) *and* (ii) he was unable to exercise care for his own safety or the safety of others (see *People* v. *Engleman, supra,* 116 Cal.App.3d Supp. 14, 19, and cases cited)." (*Id.,* at p. 769, fn. 25.)

In *Mercer,* the defendant was intoxicated, at the helm of a vehicle, and with the capability of putting the vehicle in motion. No *additional* evidence was presented as to defendant's ability to care for his own safety or the safety of others. The facts were identical in *Engleman,* with one additional twist: the settled statement said, " 'No evidence was presented as to defendant's ability to care for his own safety or the safety of others.' " (*People* v. *Engleman, supra,* 116 Cal.App.3d at p. Supp. 19.) However, the facts as recited provided evidence of the defendant's inability to care for his own or others' safety: he was behind the steering wheel of a car; the motor was running; therefore, he had the present ability to drive the car; he was intoxicated; he could not pass field sobriety tests; and an open beer can was observed on the dashboard. The claim in the settled statement that " '[n]o evidence was presented' " (*ibid.*) on the issue of defendant's incapacity can only mean that no *additional* evidence was presented other than the facts as recited.

In an arrest for public intoxication, the totality of circumstances must be considered in determining whether the intoxicated person can exercise care for his or her own safety or the safety of others. An inebriated person behind

the wheel of a car or power boat or plane or train poses a greater danger to himself or herself and others than the same person lying on a park bench. Under the facts of this case, defendant could properly have been arrested for public intoxication. His blood-alcohol level was almost four times the legal limit. He was unable to walk without staggering. His speech was slurred, his eyes bloodshot, his balance and his motor skills were impaired. Behind the wheel of a car, he was a danger to himself and others.

■ Accordingly, we hold that defendant could properly have been arrested for public intoxication, an offense committed in Officer Wong's presence, and subsequently "could have been forced to submit to a chemical test, *regardless* whether he met the separate requirements of section 23157 (i.e., 'lawful arrest' for a violation of § 23152)." (*Mercer, supra*, 53 Cal.3d at pp. 762-763.) Therefore, the trial court did not err when it denied defendant's motion to suppress evidence.

The judgment is affirmed.

Bamattre-Manoukian, J., and Gordon, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 1993. Kennard, J., was of the opinion that the petition should be granted.

*Judge of the Santa Clara Superior Court sitting under assignment by the Chairperson of the Judicial Council.