Filed 8/5/21  P. v. Mendoza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059160 |
| v. | (Super. Ct. No. 17HF1404) |
| CHASE ANTHONY MENDOZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

Chase Anthony Mendoza appeals from a judgment after a jury convicted him of evading an officer while driving recklessly and driving on a suspended license. Mendoza argues the trial court erred by not staying the sentence on one count and the imposition of assessments violated his federal constitutional rights. Neither contention has merit, and we affirm the judgment.

FACTS

A little after midnight, Orange County Sheriff investigator Carl Dossland determined Mendoza's Honda Passport (Honda), which was parked at a gas station, had an expired registration. Dossland's unmarked patrol equipped sport utility vehicle had a patrol video system (PVS). Dossland waited until Mendoza got in the driver's seat. Someone else got into the front passenger seat. The PVS was recording the encounter.

Dossland drove and parked at an angle, to the left, behind the Honda and used a spotlight to illuminate the driver's side area. Dossland, who was wearing a sheriff's uniform, got out of his vehicle and walked to the Honda's driver's side.[1] As Dossland approached the Honda, Mendoza began reversing it.

When Dossland reached the driver's side door, he raised his hand and told Mendoza to stop. Mendoza saw Dossland and raised his hand. Mendoza drove forward, hitting the curb, and put the Honda in reverse, accelerating away from the parking spot. He put the Honda in drive and sped away.

As Mendoza left the area, he ran a red light and got on the freeway. Dossland followed Mendoza with his lights and siren activated. He eventually caught Mendoza, who was traveling about 90 miles per hour. Mendoza exited the freeway, ran

---

[1] On our own motion, we ordered the PVS recording, exhibit No. 5, transmitted to this court. We watched it.

To aid the reader, the PVS recording is oriented as if the viewer was sitting in the front seat looking out the front windshield. The viewer does not see Dossland until he approaches the Honda's driver's side window.

another red light, and drove on the freeway on-ramp. While on the on-ramp, and before entering the freeway, Mendoza drove on the ramp's unpaved dirt shoulder on the other side of the guardrail. Mendoza got out of the vehicle, climbed a fence, and ran away.

Law enforcement officers could not find Mendoza. Inside the Honda, officers found a document listing Mendoza's name as the buyer.

By searching Department of Motor Vehicle (DMV) records, Dossland confirmed Mendoza's identity and found his address. Officers arrested him about eight months later.

An information charged Mendoza with felony evading while driving recklessly (Veh. Code, § 2800.2 (count 1), and misdemeanor driving on a suspended or revoked license (Veh. Code, § 14601.1, subd. (a) (count 2).

Dossland testified concerning the facts detailed above, and the PVS recording was played for the jury. Dossland explained the following: "So when I started walking up, [Mendoza] began reversing. It's not too uncommon for somebody to not be paying attention. When I came up to the [Honda], which was moving, I put my hand up in a stopping motion and I said 'Stop'." On cross-examination, Mendoza's trial counsel asked was it correct "it appeared to you [Mendoza] didn't see you[?]" Dossland answered, "Yes.".

A DMV manager testified Mendoza's driver's license had been suspended seven years before the incident. He stated the following circumstances would all result in points being assessed against the driver: speeding, driving through a red traffic light, driving on the freeway shoulder, and driving with a suspended license.

The jury convicted Mendoza of both counts. The trial court sentenced Mendoza to two years in prison on count 1 and 180 days concurrent on count 2.[2] There was no discussion of section 654's applicability.

---

[2] The trial court noted Mendoza had been sentenced to six years in another case.

3

The trial court ordered Mendoza to pay the following: $300 restitution fund fine (Pen. Code, § 1202.4, subd. (b), all further statutory references are to the Penal Code, unless otherwise indicated); $300 parole revocation fine (stayed) (§ 1202.45); and "$75 court fees" (§ 1465.8; Gov. Code, § 70373). The abstract of judgment stated the court operations assessment was $80 (§ 1465.8), and the conviction assessment was $60 (Gov. Code, § 70373) for a total of $140.

DISCUSSION

I. *Penal Code Section 654*

Mendoza argues the trial court erred by sentencing him to a concurrent sentence on count 2 because the two offenses were a single act or course of conduct. We disagree.

A person commits felony evading when the person flees or attempts to evade a pursuing peace officer in violation of Vehicle Code section 2800.1 and drives with willful or wanton disregard for the safety of persons or property by among other things making three traffic violations. (Veh. Code, § 2800.2, subds. (a) & (b); Veh. Code, § 2800.1, subds. (a)(1) & (2) [red light exhibited and siren sounding].)

It is a violation to drive on a suspended license. (Veh. Code, § 14601.1, subd. (a).) "Driving means any volitional movement of the vehicle. [Citation.]" (*People v. Lively* (1992) 10 Cal.App.4th 1364, 1368.)

Section 654 provides that "'[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.'" Section 654 "requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citation.]" (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).) "At step one, courts examine the facts of the case to determine whether

4

multiple convictions are based upon a single physical act. [Citation.]" (*Id.* at p. 312.) When the facts are undisputed we review section 654's applicability de novo. (*Ibid.*) If the convictions involve more than one act, courts determine whether the course of conduct involved multiple intents and objectives. (*Id.* at p. 316.) We briefly discuss the most relevant cases to guide our analysis.

In *In re Hayes* (1969) 70 Cal.2d 604, 605 (*Hayes*), defendant pleaded guilty to the separate offenses of driving with knowledge of a suspended license and while under the influence of intoxicating liquor. The trial court sentenced defendant for both offenses. (*Ibid.*) Our Supreme Court held that sentencing defendant on both violations did not violate section 654. (*Ibid.*) The court reasoned driving with a suspended license and driving while intoxicated were two separate and distinct criminal acts, despite the fact they were committed simultaneously. (*Id.* at p. 611.)

In *In re Michael B.* (1980) 28 Cal.3d 548, 556 (*Michael B.*), minor suffered a sustained petition alleging vehicle theft and driving without a license. That court relied on *Hayes* to conclude multiple punishments for those offenses were permissible. (*Id.* at pp. 556-557.) The court in *People v. Butler* (1986) 184 Cal.App.3d 469, 471 (*Butler*), also relied on *Hayes*, to reject defendant's contention the trial court erred by imposing consecutive sentences for vehicular manslaughter and felony hit and run. The court explained defendant had two independent states of mind—driving negligently while intoxicated and fleeing the scene. (*Id.* at pp. 473-474.)

In *People v. Jones* (2012) 54 Cal.4th 350, 352, defendant suffered convictions for possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public. The trial court sentenced defendant to three years on each count to be served concurrently. (*Ibid.*) The *Jones* court overruled *Hayes*, explaining it seemed to permit punishing defendant for all three gun offenses, a rationale it described as "dubious and overbroad." (*Id.* at

5

pp. 356-358.)  The court characterized *Michael B*. and *Butler* as "two-act cases" and opined they may have been correct even apart from *Hayes*." (*Id.* at p. 358.)  In concluding the trial court erred by imposing concurrent sentences, the *Jones* court held, "Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*Id.* at pp. 353, 358 [§ 654 applies to concurrent sentences].)

Here, section 654 did not preclude punishment for both the driving on a suspended license conviction and the evading police conviction.  Driving on a suspended license occurs when the driver volitionally moves the vehicle.  There was substantial evidence Mendoza volitionally moved the Honda by driving in reverse before he saw Dossland.  In the PVS recording, it appears Mendoza drove the Honda in reverse before Dossland appeared.  Dossland's direct and cross-examination testimony supports this conclusion.  Dossland testified that as he walked toward the Honda, Mendoza did not appear to see Dossland and began reversing.  Contrary to Mendoza's claim the PVS recording "debunk[s]" this theory, it bears it out.  From this evidence it was reasonable to conclude Mendoza drove on a suspended license before he saw Dossland.

Felony evading occurs when a person flees from a pursuing officer.  While in the gas station parking lot, Dossland was not pursuing Mendoza.  He attempted to speak with Mendoza because his registration was expired.  There was no violation of Vehicle Code section 2800.2, subdivision (a), until Dossland got back into his vehicle, activated his lights and siren, and pursued Mendoza, a point he concedes.

Thus, Mendoza committed the two offenses, driving on a suspended license and evading the police, with distinct criminal objectives.  His initial objective was to drive the Honda on a suspended license.  His subsequent objective was to evade Dossland when he activated his lights and siren and pursued Mendoza.

*Jones, supra,* 54 Cal.4th 350, provides some support for our conclusion.  Although the *Jones* court overruled *Hayes*, it apparently approved the imposition of multiple punishments in *Michael B*. and *Butler*. (*Jones, supra,* 54 Cal.4th at p. 358.)  The

6

*Jones* court specifically noted "it appears [those two cases] may have been correct even apart from *Hayes*." (*Jones, supra*, 54 Cal.4th at p. 358.)  Here, like in *Michael B.* and *Butler* we do not have a single act but instead two discrete physical acts for which multiple punishments were permissible.  (*Corpening, supra,* 2 Cal.5th at p. 315.)

Mendoza asserts *Michael B.'s* and *Butler's* continued validity is doubtful because they predated *Corpening* and its two-step test.  True, the court in *Corpening* first articulated the two-step test.  But the first step of that test requires a court to determine whether multiple convictions are based upon a *single physical act*.  (*Corpening, supra,* 2 Cal.5th 307, 311.)  And the *Jones* court stated section 654 prohibits multiple punishment for a *single physical act* that violates different provisions of law.  (*Jones, supra,* 54 Cal.4th at p. 358.)  Nothing in *Corpening* undermines the *Jones* court's seeming approval of *Michael B.* and *Butler*.  Mendoza's attempt to distinguish *Butler* fails because here, like, there he had different intents and objectives separated by sufficient time.  (*Butler, supra,* 184 Cal.App.3d at p. 474.)

Mendoza also argues that because count 1 included the predicate act of driving on a suspended license, the trial court should have stayed the sentence on count 2. Irrespective of driving on a suspended license, Mendoza committed three other more wanton predicate acts—speeding, running two red lights, and driving on the shoulder of the highway.

As a result of our conclusion, we need not reach step two of the section 654 analysis.  Thus, the trial court did not err by imposing a concurrent sentence on count 2.

## II. Assessments

Mendoza contends imposition of two court operation assessments violated his due process and equal protection rights.  Not so.

Section 1465.8, subdivision (a)(1), states, "an assessment of forty dollars ($40) *shall* be imposed on every conviction for a criminal offense."  (Italics added.) Government Code section 70373 states a $30 assessment "*shall* be imposed on every"

felony or misdemeanor conviction. (Italics added.) These assessments apply to each conviction. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483 (*Sencion*).)

Neither section 1465.8 nor Government Code section 70373 provide a court any discretion in imposing an assessment. Instead, both statutes mandate the court must levy the assessments. (*People v. Woods* (2010) 191 Cal.App.4th 269, 272.)

Mendoza concedes as much when he states, "The language of the statutes does not confer any discretion upon the sentencing court to vary upward or downward from the mandated amounts. [Citations.]" This directly refutes Mendoza's claim "it is unclear what the court intended. [Citation.]" Because there was no discretion, the court's intent was beside the point.

Mendoza states, "When combined, the two fees mandated by the statutes result in a total of $70.00 for *each* conviction." We agree. Mendoza suffered two convictions, and thus the total for these two assessments was $140, not $75 as the trial court stated. The court's minutes and abstract of judgment correctly reflect the $140 amount, a point which again Mendoza concedes.

Citing to *People v. Smith* (2001) 24 Cal.4th 849 (*Smith*), and *Sencion, supra,* 211 Cal.App.4th at page 485, Mendoza acknowledges we have the discretion to correct a legal error in the imposition of financial sanctions. That is what we will do. (*Smith, supra,* 24 Cal.4th at p. 853 [appellate court may correct erroneous amount of fine where pure question of law with only one answer]; *Sencion, supra,* 211 Cal.App.4th at p. 485 [modifying oral pronouncement of judgment regarding amount of assessments].)

For the first time in his reply brief, Mendoza relies on *People v. Tillman* (2000) 22 Cal.4th 300 (*Tillman*), to assert the trial court here had the discretion to stay the assessments. (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 [we do not consider arguments raised for the first time in a reply brief].) Nevertheless, *Tillman* is inapposite because it concerned restitution fines a trial court may decline to impose for compelling and extraordinary reasons. (*Tillman, supra,* 22 Cal.4th at p. 302.) The trial

8

court lacked the authority to stay the statutorily required assessments.  (*Sencion, supra,* 211 Cal.App.4th at p. 484 [§ 654 does not apply to assessments because not punishment]; *People v. Woods* (2010) 191 Cal.App.4th at p. 272 [no statutory authority to stay assessments].)

Mendoza complains he was prevented from requesting an ability to pay hearing on the increased amount of $140.  (*People v. Dueñas* (2019) 30 Cal.App.5th 1157.)  The sentencing hearing was one and one-half years after *Dueñas* was decided. Mendoza did not request an ability to pay hearing for the $75.  We are unpersuaded the $70 difference is why he chose not to object.

### DISPOSITION

The oral pronouncement of judgment is modified to impose a $40 court security fee (§ 1465.8, subd. (a)(1)), and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)), as to each count.  In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

9